BEARD v. MONTON

APPEAL AND ERROR—TRIAL COURT—FINDINGS OF FACT.
> Trial court's determination of the sufficiency of evidence is a finding of fact and findings of fact are not set aside unless clearly erroneous, with the Court of Appeals giving special regard to the trial court's opportunity to judge the credibility of the witnesses appearing before it.

Appeal from Mason, Charles A. Wickens, J. Submitted Division 3 February 3, 1970, at Grand Rapids. (Docket No. 6,037.) Decided February 23, 1970.

Complaint by William Beard and Ruby Beard against Bessie Monton, Laverne Monton and Charles Monton for wrongful closing of a ditch and movement of a line fence. Judgment awarding plaintiffs damages for loss of personal and real property due to moving of line fence. Plaintiffs appeal, seeking to have original fence line reestablished. Affirmed.

*John W. Claire,* for plaintiffs.

Before: HOLBROOK, P. J., and DANHOF and ROOD,* JJ.

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

REFERENCE FOR POINTS IN HEADNOTE
4, 5 Am Jur 2d, Appeal and Error §§ 76, 822.

PER CURIAM. This is one of those complicated and difficult line fence cases that raises many other concurrent matters requiring determination by the trial court. The case was heard by the Honorable Charles A. Wickens, without a jury, and whose opinion very clearly sets forth the nature of the case and also makes findings of fact and conclusions of law. We deem it helpful to restate a part of the trial judge's opinion which is as follows:

"The plaintiffs bring an action in Count I seeking damages against the defendants for wrongfully closing a ditch which was located upon the defendants' own property but was used to drain a public road. This ditch was, in fact, closed by none of the defendants, but by the defendants' father-husband (*sic*) some years ago, which would be more than six years prior to the starting of this lawsuit and the defense of the Statute of Limitations has been affirmatively raised. There is some question as to who actually filled in the old ditch and whether or not it was by agreement between the parties and the County Road Commission. A new ditch has been established at the site of the area in dispute by the County Road Commission, which does not adequately drain the land of the parties, but this is for more reasons than the closing of the old ditch, because there are other locations in the immediate area both lower and higher than the bottom of the old closed ditch. A view of the premises shows that both of the parties have taken the old road site into their respective farm lands and are benefiting, in fact, by the closing of the old ditch and the abandonment of the old road site. It is, therefore, the decision of the court that the plaintiff has not established a tort and injury and damages by the preponderance of the proofs which would entitle him to damages in Count I.

"The preponderance of the proofs shows that there was an old established fence, recognized for

over forty-five years, between the lands of the parties in this dispute, and that the defendants, after surveying, established another fence west of the old recognized fence line along a line shown by the County Surveyor to be the true boundary line between the property of the parties. However, the old recognized fence line, even though not on the true boundary line, has, by use and adverse possession, become the legal boundary line between the premises of the parties, and the defendants unjustly took part of the plaintiffs' land into their own when they moved the fence to the west of the old fence line. The plaintiffs have asked that the old fence be reestablished, but they have given no boundary line, by description, which the court can use to reestablish the old line, and the court feels that the acceptable thing to do is to allow the new fence line to stand as it is on the true line, by survey, and to compensate the plaintiffs in damages for the loss of the land taken from them. The plaintiffs also lost, in this illegal moving of the fence, some fence posts which were in the ground that are admittedly still in the possession of the defendants. The court finds that the plaintiffs have been damaged by this loss of land and fence posts in the amount of two hundred and fifty ($250.00) dollars."

The only issue raised on appeal by plaintiffs is that the court erred in determining that:

"The plaintiffs have asked that the old fence be reestablished, but they have given no boundary line, by description, which the court can use to reestablish the old line, and the court feels that the acceptable thing to do is to allow the new fence line to stand as it is on the true line, by survey, and to compensate the plaintiffs in damages for the loss of the land taken from them."

Plaintiff's claim that Exhibit C, a survey of the area by the county surveyor and received as an ex-

hibit in the case, sufficiently defined the old line fence
so that it could be reestablished. We have examined
Exhibit C and it does set forth that the old line fence
was a certain number of feet at certain points East
of the actual line as surveyed. The surveyed line
was marked out on the exhibit but the old line fence
was not. In going to the surveyor's testimony, the
following appears:

"*Q.* What was the prime purpose of the survey?
Was it to determine the fence line, or was it to deter-
mine the Benedict Road area?

"*A.* The Benedict Road area.

"*Q.* This is what you were making the survey for
then. Is that right, for this area up here?

"*A.* That's right.

"*Q.* And, in order to do that, where did you start
your measuring?

"*A.* We started from the north end and worked to
the south. We identified the north quarter corner
from old records and found the stone referred to
with a cross here, and some broken glass and iron
around it.

"*Q.* I see. And, in order to do that then, I pre-
sume you surveyed both ends of a line to find the
true line. Is that it?

"*A.* Well, of course, our southern terminal, on
the County line, was a south quarter corner.

"*Q.* I see.

"*A.* And, we found records in the Oceana County
Road Department making it possible to find that
corner and identifying it.

"*Q.* That would be the corner on Washington
Road or in the vicinity of Washington Road. Is that
correct?

"*A.* That is right.

"*Q.* Now, from this sketch, was there a fence ex-
isting along that line at the time?

"*A.* At about a quarter of a mile in, there was
an old fence, and I went through on the northern end,

as I recall, where there was new fence. There was some new fence put in.

"*Q.* Now, on the southern end of the fence that you refer to, was that to the east or the west of the survey line?

"*A.* It started out to the east and at the north end it crossed the quarter line.

"*Q.* Where do you mean 'at the north end'? Do you mean up where Benedict Road is?

"*A.* Yes.

"*Q.* I see. Now, how far to the east of the survey line was this fence, if you can determine from your drawing?

"*A.* Well, let's see. I don't remember everything for five years, but the south end of north-south fence, three and eight-tenths east of line. That would be approximately a quarter mile to the north of Washington Road.

"*Q.* A quarter mile up from Washington Road, at that point the fence was what, three plus feet?

"*A.* Three point eight feet. (3.8')

"*Q.* Roughly four feet then, the fence line was four feet east of the survey line. Is that correct?

"*A.* That's right.

"*Q.* I see. And, does that vary somewhat as it goes up?

"*A.* Yes. It—well, let's see,—

"*Q.* How about right at the end of Benedict Road? Is there a point there?

"*A.* There it is thirty-three hundredths (33/100) west of the line.

"*Q.* I see. And, then dropping down here a few feet, at this point, the next point down on your survey, does that show?

"*A.* Yes. There, at what would be fifteen hundred feet to the south, it would be twenty-five hundredths (25/100) east of line.

"*Q.* Two point two five? (2.25)

"*A.* No. I think that's zero point two five. (0.25)

"*Q.* So, it runs from approximately four feet down here a quarter of a mile up to a point south of Benedict Road, where this old fence line was east of the survey line?

"*A.* That is true.

"*Q.* I see. And, then right at Benedict Road, the fence moved over to the west side of the line. Is that correct?

"*A.* That is right."

We can understand why the trial judge said there was insufficient evidence in the record to reestablish the old line fence. This was a determination of fact. Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it. GCR 1963, 517.1, *Dauer* v. *Zabel* (1967), 9 Mich App 176.

Affirmed. No costs, appellee having failed to file a brief.